IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE JOHN ALLAN COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 05-CV-1150-MLB |
| | ) | |
| v. | ) | |
| | ) | |
| THE CRAIG ALLEN COMPANY L.L.C., | ) | PLAINTIFF'S MEMORANDUM |
| CRAIG ALLEN TATRO, an individual, and | ) | OF LAW IN SUPPORT OF |
| and ERIK DAVID LESCHUK, an individual, | ) | MOTION FOR ISSUANCE OF |
| | ) | PRELIMINARY INJUNCTION |
| Defendants. | ) | |

Pursuant to Fed. R. Civ. P. 65(a) and D. Kan. Rule 65.1, Plaintiff has moved the Court to issue a preliminary injunction against Defendants, The Craig Allen Company L.L.C., Craig Allen Tatro and Erik David Leschuk.  Plaintiff requests that the Court's preliminary injunction be as follows:

Defendants should be preliminarily restrained and enjoined from using in connection with their recently opened men's salon in Wichita, Kansas: (1) the mark and name CRAIG ALLEN'S, including the corporate name THE CRAIG ALLEN COMPANY LLC and the domain name <craigallens.com>; (2) the CA Circle Design logo; (3) the mark CRAIG ALLEN'S & CA Circle Design; (4) the mark MEN'S SERVICE REDISCOVERED; (5) a trade dress that is likely to be confused with or resembles Plaintiff's trade dress; and from otherwise unfairly competing with The John Allan Company.

This memorandum of law is respectfully submitted, in accordance with D. Kan. Rules 7.1 and 7.6,  in support of Plaintiff's Motion for Issuance of Preliminary Injunction.  Plaintiff has separately filed affidavits and exhibits in support of the motion.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION . . . . . . . . . . . . . . . . . . . 3

    A.       The Preliminary Injunction Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.       Plaintiff Has A Substantial Likelihood of Prevailing on the
              Merits of its Claims at Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          1.      Plaintiff is Likely to Prevail on Counts I-VI: Violations
                  of Sections 32 and 43(a) of The Lanham Act: 15 U.S.C. § 1114
                  and 15 U.S.C. § 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                  a. The Similarity of the Marks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
                  b. Defendants' Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
                  c. The Existence of Actual Confusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                  d. The Similarity of Services and the Manner of Marketing . . . . . . . . . . 10
                  e. The Degree of Care of Purchasers . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                  f. The Strength of the Marks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          2.      Plaintiff is Likely to Prevail on Count VII: Trade Dress Infringement . . . 14

                  a. Plaintiff's Trade Dress is Distinctive . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                      i. Plantiff's Trade Dress Is Inherently Distinctive . . . . . . . . . . . . 14
                      ii. Plaintiff's Trade Dress Has Acquired Secondary Meaning . . . . 15

                  b. Plaintiff's Trade Dress is Non-Functional . . . . . . . . . . . . . . . . . . . . . . . 17

                  c. There is a Likelihood of Confusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

                      i. Similarity of the Trade Dress . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
                      ii. Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                      iii. Actual Confusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
                      iv. Similarity of the Services and Marketing Strategies . . . . . . . . . 21
                      v. The Degree of Care Likely to be Exercised by Purchasers . . . . 22
                      vi. Strength . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

3.      Plaintiff is Likely to Prevail on Counts VIII-IX: Unfair Competition . . . . 23

C.      There is a Substantial Threat of Irreparable Harm
        if the Injunction is Not Issued  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

D.      The Threatened Injury to Plaintiff Outweighs the Harm the
        Injunction May Cause to Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

E.      A Preliminary Injunction Serves the Public Interest  . . . . . . . . . . . . . . . . . . . . . . 26

II. PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY  . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**TABLE OF AUTHORITIES**

<u>**CASES**</u>

<u>Ambassador East, Inc. v. Orsatti, Inc.</u>, 257 F.2d 79 (3d Cir. 1958) . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Amoco Oil Co. v. Rainbow Snow</u>, 748 F.2d 556 (10th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Amoco Oil Co. v. Rainbow Snow, Inc.</u>, 809 F.2d 656 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . 24

<u>Bayer Healthcare LLC v. Nagrom, Inc.</u>, 72 U.S.P.Q.2d 1751, 2004
      U.S. Dist. LEXIS 19454 (D. Kan. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 25

<u>Beer Nuts v. Clover Club Foods Co.</u>, 805 F.2d 920 (10th Cir. 1986) . . . . . . . . . . . . . . . . . . . . 7

<u>Beer Nuts v. Clover Club Foods Co.</u>, 711 F.2d 934 (10th Cir. 1983) . . . . . . . . . . . . . . . . . . . 7, 14

<u>Behnam Jewelry Corp. v. Aron Basha Corp. v. Aron Basha Corp.</u>, 45 U.S.P.Q.2d 1078, 1997 U.S.
Dist. LEXIS 15927 (S.D.N.Y. Oct. 15, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

<u>Brunswick Corp. v. Spirit Reel Co.</u>, 832 F.2d 513 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 18

<u>Centaur Communications, Ltd. v. A/S/M Communications, Inc.</u>,
      830 F.2d 1217 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22

<u>Chopra v. Kapur</u>, 185 U.S.P.Q. 195, 1974 U.S. Dist. LEXIS 11526
      (N.D. Cal. Dec. 18, 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Clinique Labs., Inc. v. Dep Corp.</u>, 945 F. Supp. 547 (S.D.N.Y. 1996) . . . . . . . . . . . 15, 17, 19, 20

<u>Dreyfus Fund, Inc. v. Royal Bank of Canada</u>, 525 F. Supp. 1108 (S.D.N.Y. 1981) . . . . . . . . . . . 8

<u>Francis S. Denney, Inc. v. I.S. Labs., Inc.</u>, 737 F. Supp. 247 (S.D.N.Y. 1990) . . . . . . . . . . . . . . 27

<u>Fun-Damental Too v. Gemmy Indus. Corp.</u>, 111 F.3d 993 (2d Cir. 1997) . . . . . . . . . . . . . . . . . 22

<u>Gasser Chair Co. v. Infanti Chair Mfg. Corp.</u>, 943 F. Supp. 201
      (E.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Gaston's White River Resort v. Rush</u>, 701 F. Supp. 1431 (W.D. Ark. 1988) . . . . . . . . . . . . . . 7

<u>GTE Corp. v. Williams</u>, 904 F.2d 536 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Hartford House, Ltd. v. Hallmark Cards Inc</u>, 846 F.2d 1268 (10th Cir.)
      <u>cert</u>. <u>denied</u>, 488 U.S. 908, 102 L. Ed.2d 248, 109 S. Ct. 260 (1988) . . . . . . . . . . . . . 15, 18

iii

Hartford House Ltd. v. Hallmark Cards, Inc., 647 F. Supp. 1533
    (D.Colo. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Heartland Corp. v. Sifers, 2002 U.S. Dist. LEXIS 13581
    (D. Kan. July 12, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 22, 23, 25

Heartsprings, Inc. v. Heartspring, Inc., 143 F.3d 550 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . 19

IC Indus. v. I.C. Indus., 595 F. Supp. 340 (M.D. Fla. 1983) . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Jordache Enters. v. Hogg Wyld, Ltd., 828 F.2d 1482 (10th Cir. 1987) . . . . . . . . . . . . . . . . . 4, 7

Joy Mfg. Co. v. CGM Valve & Gauge Co., 730 F. Supp. 1387 (S.D. Tex. 1989) . . . . . . . . . . . 25

King of the Mountain Sports, Inc. v. Chrysler Corp.,
    185 F.3d 1084 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 11

Laboratories Roldan C. por A. v. Tex Int'l, 902 F. Supp. 1555 (S.D. Fla. 1995) . . . . . . . . . . . 4, 26

Landscape Forms, Inc. v. Columbia Cascade Co., 117 F. Supp. 2d 360
    (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867 (2d Cir. 1986) . . . . . . . . . . . 9

Marker International v. De Bruler, 844 F.2d 763 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . 15

Northam Warren Corp. v. Universal Cosmetic Co., 18 F.2d 774 (7th Cir. 1927) . . . . . . . . . . . . . 6

Paddington Corp. v. Attiki Importers & Distribs., Inc., 996 F.2d 577 (2nd Cir. 1993) . . . 19, 20, 22

PAF S.r.l. v. Lisa Lighting Co., 712 F. Supp. 394 (S.D.N.Y. 1989) . . . . . . . . . . . . . 11, 17, 20, 21

P.E. Guerin, Inc. v. Nanz Custom Hardware, Inc., 45 U.S.P.Q. 2d 1524
    1997 U.S. Dist. LEXIS 19914 (S.D.N.Y. Dec. 16, 1997) . . . . . . . . . . . . . . . . . . . . . . . . 20

Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.,
    858 F. Supp. 1268 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

RJR Foods, Inc. v. White Rock Corp., 201 U.S.P.Q. 578, 1978 U.S. Dist. LEXIS 15080 (S.D.N.Y.
    Oct. 6, 1978), aff'd, 603 F.2d 1058 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, 21 S. Ct. 7 (1900) . . . . . . . . . . . . . . . . . . 6

Sally Beauty Co. v. Beautyco, Inc., 304 F.3d 964, 972 (10th Cir. 2002) . . . . . . . . . . 5, 7, 9, 14, 20

Stork Restaurant, Inc. v. Sahati, 166 F.2d 348 (9th Cir. 1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Studio 1712, Inc. v. Etna Products Co., 777 F. Supp. 844 (D. Colo. 1991) . . . . . . . . . . . . . . . . 22

Telebrands Corp. v. E. Mishan & Sons, 46 U.S.P.Q.2d 1493
    1997 U.S. Dist. LEXIS 6229 (S.D.N.Y. May 7, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Teledyne Indus., Inc. v. Windmere Prods., Inc., 433 F. Supp. 710,
    740 (S.D. Fla. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . 22

Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 120 L. Ed. 2d 615,
    112 S. Ct. 2753 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 14

Universal Motor Oils Co. v. Amoco Oil Co., 15 U.S.P.Q. 2d 1613 1990 U.S. Dist. LEXIS 7533 (D.
    Kan. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 10

Universal Motor Oils Co. v. Amoco Oil Co., 809 F. Supp. 816 (D. Kan. 1992) . . . . . . . . . . . . . 8

Universal Money Ctrs. v. AT&T, 22 F.3d 1527, 1532 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . 10

Vaudable v. Montmartre, Inc., 193 N.Y.S.2d 332, 123 U.S.P.Q. 357
    (Sup. Ct. N.Y. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Western Chem. Pumps, Inc. v. Superior Mfg.,
    989 F. Supp. 1112 (D. Kan. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATUTES

15 U.S.C. § 1114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. § 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

## PRELIMINARY STATEMENT

Plaintiff The John Allan Company and its predecessors in interest (collectively, "The John Allan Company" or "Plaintiff") owns and operates two nationally renowned men's salons in New York City called "JOHN ALLAN'S," one of which has been located near Wall Street since 1988 and the other in midtown Manhattan near Grand Central Station since 2002.  The John Allan Company also sells its own line of hair and skin care products that are sold in its salons and throughout the country in stores such as Saks Fifth Avenue, Nordstrom and Barney's.  The John Allan Company's salons and products have been featured on nationally broadcast television programs, including The Today Show and Access Hollywood on NBC and in print publications with national circulations, such as GQ, Business Week, Playboy, Cigar Aficionado and Men's Journal.

Over the course of its 17 years of providing men's grooming services through its salons and cosmetic products, The John Allan Company has continued to use certain distinctive  marks and visual features to identify and distinguish its business, including: (1) the name JOHN ALLAN'S; (2) a distinctive circle logo with the letters "J" and "A" in a stylized font (the "JA Circle Design"); (3) a mark that combines the JOHN ALLAN'S name with the JA Circle Design ("JOHN ALLAN'S & JA Circle Design"); (4) various slogan marks, including MEN'S SERVICE REDISCOVERED; and (5) a signature trade dress that creates the look and feel of an old world men's club.

The John Allan Company now seeks a preliminary injunction to enforce its intellectual property rights created by the continued use of its distinctive marks, logos and trade dress and to enjoin Defendants The Craig Allen Company LLC and its owners, Craig Tatro and Erik Leschuk (collectively, "Defendants" or "The Craig Allen Company") from unlawfully infringing upon these

1

rights by using, in connection with their recently opened men's salon (operating under the name "Craig Allen's") in Wichita, Kansas, (1) the name CRAIG ALLEN'S, including in the corporate name THE CRAIG ALLEN COMPANY LLC and the domain name <craigallens.com>; (2) its CA circle design logo (the "CA Circle Design"); (3) the mark CRAIG  ALLEN'S & CA Circle Design; (4) the mark MEN'S SERVICE REDISCOVERED; (5) a trade dress that is likely to be confused with or resembles Plaintiff's trade dress; and from otherwise unfairly competing with The John Allan Company in the operation of the salon's business.

Suffice it to say, it is rare to encounter such a blatant example of commercial piracy as found in this case.  Defendants have embarked upon a brazen attempt to knock off The John Allan Company's trademarks and trade dress and otherwise violate The John Allan Company's proprietary rights associated therewith.

This is a classic case for the imposition of immediate injunctive relief.  Unless the Court restrains Defendants from using the substantially identical logo, names, marks and signature features of the trade dress of The John Allan Company, The John Allan Company will continue to suffer irreparable injury to its reputation, goodwill and business.

## FACTS

The Court is respectfully referred to the facts set forth in the Affidavits of John Allan Meing, sworn to on May 18, 2005 (the "Allan Aff."), and of Brian Riordan, sworn to on May 16, 2005 (the "Riordan Aff.").

<u>ARGUMENT</u>

**I.  PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION**

      A.     <u>The Preliminary Injunction Standard</u>

    The standards for issuance of a preliminary injunction are clear.  To obtain a preliminary injunction, Plaintiff must establish: (1) there is a substantial likelihood that it will ultimately prevail on the merits; (2) it will suffer irreparable injury without the injunction; (3) its injury outweighs whatever damage the injunction will cause the opposing party; and (4) the issuance of an injunction would not be adverse to the public interest.  See <u>Amoco Oil Co. v. Rainbow Snow</u>, 748 F.2d 556, 557 (10th Cir. 1984).

      B.     <u>Plaintiff Has A Substantial Likelihood of Prevailing on the Merits of its Claims at Trial</u>

    The John Allan Company uses a variety of marks to identify the men's grooming business that it has developed over the past 17 years, including: (1) JOHN ALLAN'S; (2) the JA Circle Design; (3) JOHN ALLAN'S & JA Circle Design; (4)  MEN'S SERVICE REDISCOVERED; and (5) trade dress that includes a combination of features that create the environment of a men's club. As set forth below, Defendants have blatantly copied and misappropriated each of these word and design marks, as well as virtually every aspect of The John Allan Company's trade dress. Defendants have even copied the style of The John Allan Company's business cards.  Since Defendants are using virtually identical marks and trade dress to promote the same services as those offered by The John Allan Company, there is a strong likelihood of confusion and Plaintiff is thus likely to prevail on its claims for trademark infringement, false designation of origin, trade dress infringement and unfair competition.

1.      <u>Plaintiff is Likely to Prevail on Counts I-VI: Violations of Sections 32 and 43(a) of The Lanham Act: 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a)</u>

Section 32 of the Lanham Act, 15 U.S.C. § 1114, prohibits the unauthorized use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or cause mistake, or to deceive." 15 U.S.C. § 1114. <u>See</u> <u>Jordache Enters. v. Hogg Wyld, Ltd.</u>, 828 F.2d 1482, 1484 (10th Cir. 1987). <u>Universal Motor Oils Co. v. Amoco Oil Co.</u>, 15 U.S.P.Q.2d 1613, 1618, 1990 U.S. Dist. LEXIS 7533 (D. Kan. 1990).

In addition to the protection under Section 32 against the infringement of registered marks, Section 43(a) of the Lanham Act provides injunctive and monetary relief against:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any words, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person, or (B) In commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, . . .

15 U.S.C. § 1125(a).

This section protects a broad spectrum of marks, including unregistered marks and logos.  <u>See</u> <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 767-68, 112 S. Ct. 2753 (1992); <u>Laboratories Roldan C. por A. v. Tex Int'l</u>, 902 F. Supp. 1555, 1565 (S.D. Fla. 1995)

( "Section 43(a) provides trademark protection to those who have not registered their trademark in the United States, but who are first to use the mark in the Untied States marketplace").

The test for liability under both Sections 32 and 43(a) of the Lanham Act is whether there is a likelihood of confusion.[1]  See Two Pesos, 505 U.S. at 775-76; Universal Motor Oils Co., 15 U.S.P.Q.2d at 1618.  In determining whether a plaintiff has demonstrated a likelihood of confusion, courts in this Circuit look at the following six (6) factors:

> (1) the degree of similarity between the marks;  (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing;  (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.

Sally Beauty Co. v. Beautyco, Inc., 304 F.3d 964, 972 (10th Cir. 2002); See also King of the Mountain Sports, Inc. v. Chrysler Corp., 185 F.3d 1084, 1089-90 (10th Cir. 1999).

    a.    The Similarity of the Marks

There can be no dispute that Defendants' infringing marks, namely the CA Circle Design, the CRAIG ALLEN'S name, The Craig Allen Company LLC corporate name, the <craigallens.com> domain name, the CRAIG ALLEN'S & CA Circle Design and MEN'S SERVICE REDISCOVERED  are substantially identical to the marks of The John Allan Company, as indicated below.

---

[1]    While a plaintiff may prevail under Section 32 or 43(a) based upon a showing of likelihood of confusion as to source or origin, a plaintiff may also recover under Section 43(a) by making a showing of likelihood of confusion as to affiliation, sponsorship or approval.

| **Plaintiff's Marks** | **Defendants' Infringing Uses** |
|---|---|
| JOHN ALLAN'S & JA Circle Design: | CRAIG ALLEN'S & CA Circle Design: |

                    

JOHN ALLAN'S                            CRAIG ALLEN'S

JA Circle Design:                       CA Circle Design: (see above)



The John Allan Company LLC[2]           The Craig Allen Company L.L.C.

<johnallans.com>                        <craigallens.com>

MEN'S SERVICE REDISCOVERED              MEN'S SERVICE REDISCOVERED

        In determining confusion, it is not necessary that every word or letter of a trademark is

appropriated. See Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, 21 S. Ct. 7 (1900).

Confusion may be likely, therefore, even though the marks are not identical. See Universal Motor

Oils Co. v. Amoco Oil Co., 15 U.S.P.Q.2d 1613 (D. Kan. 1990) (hereinafter "Universal Motor

Oils I); see e.g. Northam Warren Corp. v. Universal Cosmetic Co., 18 F.2d 774 (7th Cir. 1927)

(in holding that CUTICLEAN infringes CUTEX, the court stated that "when there are small

---

[2]This was Plaintiff's corporate name at the time that Defendants opened their competing establishment.

differences between the marks, the differences may be de minimis when compared to the similarities").  Indeed, infringement may be based on something less than the entire mark, if the part used is likely to deceive the public.  See Gaston's White River Resort v. Rush, 701 F. Supp. 1431 (W.D. Ark. 1988).

Indeed, as here, where the services are directly competitive, the degree of similarity required to prove trademark infringement is less than in the case of dissimilar services. Sally Beauty Co., 304 F.3d at 974-75; See RJR Foods, Inc. v. White Rock Corp., 201 U.S.P.Q. 578, 1978 U.S. Dist. LEXIS 15080 (S.D.N.Y. 1978), aff'd, 603 F.2d 1058 (2d Cir. 1979). Notwithstanding, here all of the marks are virtually identical. See IC Indus. v. I.C. Indus., 595 F. Supp. 340, 343 (M.D. Fla. 1983).

b.    Defendants' Intent

The deliberate adoption of a similar mark may well lead to the inference of an intent to pass off goods or services of another. Beer Nuts v. Clover Club Foods Co., 805 F.2d 920, 927 (10th Cir. 1986) (hereinafter "Beer Nuts II").  Evidence that Defendants deliberately adopted a mark similar to Plaintiff's mark supports a finding that Defendants intended to confuse the public.  Jordache Enters., 828 F.2d at 1486.  As the Tenth Circuit has stated, "one who adopts a mark similar to another already established in the marketplace does so at his peril."  Beer Nuts v. Clover Club Foods Co., 711 F.2d 934, 941 (10th Cir. 1983) (hereinafter "Beer Nuts I").

The factor of intent is also overwhelming in The John Allan Company's favor. Defendants Craig Allen Tatro and Erik David Leschuk each visited the JOHN ALLAN'S midtown salon (and defendant Leschuk also visited the downtown JOHN ALLAN'S salon), prior to opening their competing salon in Wichita, and thus had actual knowledge of The John Allan Company's marks.  Allan Aff., ¶ 40, Exh. R.  Notwithstanding that there are many other

7

corporate, trade and domain names to choose from, such as for example, "Craig's Salon," "Craig's Men's Club," "Craig Tatro's Salon," "Erik David's" or "Craig David's," Defendants decided to use the confusingly similar names "Craig Allen's," "The Craig Allen Company L.L.C." and "<craigallens.com>."

Further, with a complete disregard for The John Allan Company's rights, Defendants adopted a logo (the CA Circle Design) that is virtually identical to the JA Circle Design, with the letters "C" and "A" in the exact same font as the letters "J" and "A". This infringing logo appears throughout Defendants' salon, including on its frosted glass partitions, on the black cutting jackets worn by the customers and on the aprons worn by the valet who greets customers as they walk into Defendants' salon. Allan Aff., ¶ 33, Exh. M. Then, so as to leave no question that their name and logo were adopted intentionally, Defendants also copied the JOHN ALLAN'S & JA Circle Design mark by placing the CA Circle Design in a similar position relative to the name Craig Allen's. This obvious rip off of the registered JOHN ALLAN'S & JA Circle Design mark is featured prominently above the entrance to Craig Allan's as well as on Defendants' promotional materials and business cards.[3] Allan Aff., ¶ 31, Exh. J.

Since so many of the aspects of Defendants' business are virtually identical to those of The John Allan Company, it is evident that Defendants intentionally copied The John Allan Company's marks to trade upon the goodwill developed thereunder. Allan Aff., ¶¶ 30-39. Universal Motor Oils Co. v. Amoco Oil Co., 809 F. Supp. 816, 820 (D. Kan. 1992) (hereinafter "Universal Motor Oils II); See Dreyfus Fund, Inc. v. Royal Bank of Canada, 525 F. Supp. 1108

---

[3] Defendants acknowledge that their CA Circle Design infringes upon the trademarks of The John Allan Company and have removed certain images of the CA Circle Design from their website at <craigallens.com>. These modest changes do not go far enough and Defendants' failure to remove all instances of the CA Circle Design confirms Defendants' continued bad faith.

(S.D.N.Y. 1981) (wrongful intent inferred where defendant knew of plaintiff's mark, had freedom to choose any other, but just happened to choose the same one).

        c.      <u>The Existence of Actual Confusion</u>

A finding of actual confusion is not necessary to prevail in an action for trademark infringement -- it is the likelihood of confusion that is critical. <u>Sally Beauty Co.</u>, 304 F.3d at 934. <u>See also</u> <u>Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.</u>, 799 F.2d 867, 875 (2d Cir. 1986). Here, the virtual identity of the marks and the nature of the competing services presumes confusion. <u>IC Indus.</u>, 595 F. Supp. at 343. Nonetheless, evidence of actual confusion in the marketplace may be one of the best indications of a likelihood of confusion. <u>King of the Mountain Sports</u>, 185 F.3d at 1092.

Here, there is undisputed evidence of actual confusion among patrons. Allan Aff., ¶¶ 28, 42, Exh. U; Riordan Aff., ¶¶ 3-4. In one instance, a woman from Wichita, Kansas who had seen The John Allan Company's hair care products in *Playboy* magazine, advised The John Allan Company that she was happy to learn that The John Allan Company was opening a salon in Wichita. Allan Aff., ¶ 28; Riordan Aff., ¶¶ 3-4. She said that she believed that Defendants' establishment was affiliated with The John Allan Company because it was exactly the same. <u>Id.</u> Another customer sent an email indicating that it has seen Defendants' website and believed that the JA Circle Design and The John Allan Company's website had been misappropriated by Defendants. Allan Aff., ¶ 42, Exh. U. Since Defendants have only been operating their salon for a short period of time, there likely will be additional instances of actual confusion if Defendants are not enjoined from their infringing activities.

      d.    <u>The Similarity of Services and the Manner of Marketing</u>

While identical products or services are not required to prove a likelihood of confusion, the greater the similarity between the products or services, the greater the likelihood of confusion. <u>Universal Motor Oils I</u>, 15 U.S.P.Q.2d at 1620; <u>Universal Money Ctrs. v. AT&T</u>, 22 F.3d 1527, 1532 (10th Cir. 1994). The services of The John Allan Company and those of the Defendants are similar, if not identical. Defendants' website at <craigallens.com> describes Craig Allen's as offering, among other services, hair cuts, shoe shines, scalp and full body massages, hot towel treatments and manicures. The John Allan Company offers all of these identical services at its JOHN ALLAN'S salons. Allan Aff., ¶ 26. There can be no question, therefore, that the services at Defendants' establishment are the same services provided by The John Allan Company in New York.

Further, the manner in which Defendants market these services is very similar to the marketing of The John Allan Company. For example, Defendants' website at <craigallens.com> describes Craig Allen's as follows:

> Craig Allen's men's care offers the services of an exclusive men's spa with the charm of an old time barbershop. Come join us as we return to days gone by... when service was compromised on no man...

The John Allan Company similarly markets its services on its website at <johnallans.com>:

> Offering a return to a simple time, when a man had a place he could call his own. Where cool jazz eases the soul and a steaming hot towel erases the pressures of the day. Relax with a scalp massaging shampoo, the perfect haircut or even a full body massage. Let us get those wing tips shining, while you enjoy a beverage, relax in one of our club chairs or shoot a game of billiards.

Allan Aff., ¶¶ 25, 38, Exhs. I & N.

In addition, in an article published in the <u>Wichita Business Journal</u> on May 28, 2004, Craig Tatro describes CRAIG ALLEN'S: "We are men's service rediscovered."  Precisely the same phrase MEN'S SERVICE REDISCOVERED is another of The John Allan Company's registered marks.  Allan Aff.,  ¶ 34, Exh. N.

In sum, this factor also weighs heavily in favor of The John Allan Company.

e.      <u>The Degree of Care of Purchasers</u>

As far as the degree of care or sophistication of purchasers concerned, purchasers will have difficulty differentiating between the services because both have virtually the same appearance and are essentially the same.  In such circumstances, the sophistication of the purchasers cannot be relied upon to prevent confusion, and may actually operate to increase confusion. <u>PAF S.r.l. v. Lisa Lighting Co.</u>, 712 F. Supp. 394, 409 (S.D.N.Y. 1989)

f.      <u>The Strength of the Marks</u>

The stronger the mark, the greater the likelihood that encroachment on it will cause confusion. <u>King of the Mountain Sports</u>, 185 F.3d at 1093.  The John Allan Company's marks are extremely strong marks because they are either inherently distinctive, such as the registered marks JOHN ALLAN'S & JA Circle Design and MEN'S SERVICE REDISCOVERED, as well as the unique JA Circle Design logo, or have become distinctive through secondary meaning by virtue of having been used for more than a decade in connection with men's grooming services provided by The John Allan Company, such as the name and mark JOHN ALLAN'S.  In this regard, the registered mark JOHN ALLAN & JA Circle Design has  reached incontestible status, which creates an irrebutable presumption that the mark is inherently distinctive. <u>Bayer Healthcare LLC v. Nagrom, Inc.</u>, 72 U.S.P.Q.2d 1751, 1754, 2004 U.S. Dist. LEXIS 19454 (D. Kan. 2004);

Heartland Corp. v. Sifers, 2002 U.S. Dist. LEXIS 13581, *16 (D. Kansas 2002)("After the five years, the trademark becomes incontestable, meaning there is conclusive evidence of its distinctiveness.").  The registered mark MENS SERVICE REDISCOVERED is, as a matter of law,  presumed to be inherently distinctive. See generally GTE Corp. v. Williams, 904 F.2d 536, 538 (10th Cir. 1990).

The JOHN ALLAN'S men's club-style salons have received critical acclaim from the media and have been featured in nationally televised television programs, including The Today Show and Access Hollywood on NBC, as well as on programs on CNN, the Fine Living Channel and the Style Network, all of which were broadcast in Wichita. Allan Aff.,  ¶ 20.   Feature stories have appeared in print media with national circulations including GQ, New York Magazine, Cigar Aficionado, Time Out, The New York Times, Men's Journal and The Robb Report.  In the early nineties, even before John Allan opened a second salon, *Entrepreneur Magazine* named John Allan one of their "Top 40 Under 40," catapulting him to the status of an innovator and pioneer in the men's grooming industry. Allan Aff., ¶ 21, Exh. E.

The marks of the John Allan Company have also gained exposure through The John Allan Company's extremely successful line of hair care and skin care products that are sold at stores throughout the United States such as Nordstrom, Saks Fifth Avenue and Barneys.  These products are sold using the JOHN ALLAN'S & JA Circle Design mark, and promotional materials about the JOHN ALLAN'S salons are generally available at the stores that carry these products.  Allan Aff., ¶ 22.

As a result of the widespread media coverage of JOHN ALLAN'S salons, the marks JOHN ALLAN'S & JA Circle Design itself, the JA Circle Design itself, MEN'S SERVICE

12

REDISCOVERED and the name and mark JOHN ALLAN'S are well known as identifying the source of the men's grooming services and products that originate with The John Allan Company. Allan Aff., ¶ 23.

Given that many people travel between Kansas and New York, (see Allan Aff., ¶¶ 43-44), customers are likely to mistakenly believe that Defendants' services are associated with the products and services of The John Allan Company, or are at least endorsed by it. Where, as here, a service establishment has established a national reputation, courts have enjoined service establishments from using similar or identical trade names in geographic locations far more remote than the distance between New York and Kansas. See Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79 (3d Cir. 1958) (Chicago and Philadelphia); Stork Restaurant, Inc. v. Sahati, 166 F.2d 348 (9th Cir. 1948) (New York and San Francisco); Chopra v. Kapur, 185 U.S.P.Q. 195, 1974 U.S. Dist. LEXIS 11526 (N.D. Cal. 1974) (San Francisco and Chicago – "the clientele of Plaintiffs' restaurants is ambulatory and Plaintiffs' reputation and goodwill have extended to the San Francisco area. In these circumstances, geographic proximity is not necessary." (citations omitted)); Vaudable v. Montmartre, Inc., 193 N.Y.S.2d 332, 123 U.S.P.Q. 357 (Sup. Ct. N.Y. County 1959) (Paris and New York).

In summary, an analysis of these six factors points directly to a finding of likelihood of success on the merits of The John Allan Company's trademark infringement claims. Plaintiff, therefore, is entitled to a preliminary injunction under Sections 32 and 43(a) of the Lanham Act to preclude Defendants from using the marks (1) JOHN ALLAN'S, (2) the JA Circle Design, (3) JOHN ALLAN'S & JA Circle Design, (4) MEN'S SERVICE REDISCOVERED, and any other confusingly similar marks.

13

2.       Plaintiff is Likely to Prevail on Count VII: Trade Dress Infringement

To establish a case of trade dress infringement under Section 43 (a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must first demonstrate that its trade dress is inherently distinctive or that it has acquired distinctiveness through secondary meaning. Sally Beauty Co., 304 F.3d at 972.  Second, a plaintiff must  demonstrate that there is a likelihood of confusion between the trade dress of defendant and that of plaintiff.  See id.   Lastly, the trade dress must not be functional, when viewed as a whole.  Id.

a.       Plaintiff's Trade Dress is Distinctive

i.       Plaintiff's Trade Dress is Inherently Distinctive

Trade dress which is fanciful, arbitrary or suggestive is inherently distinctive since "its intrinsic nature serves to identify a particular source"; it is therefore entitled to protection without a showing of secondary meaning. Two Pesos, 505 U.S. at 768  Fanciful or arbitrary trade dress "bears no relationship to the product or service with which it is associated." Beer Nuts I, 711 at 739.  When viewed as a whole, The John Allan Company's trade dress does not relate to a hair salon services, but rather engenders the atmosphere and feel of a men's club.  These combination of features includes low set leather chairs, double-sided mirrored dividers for the cutting stations, miniature traditional wood dressers at the stations, stools on wheels, low tables for drinks, black cutting jackets and black valet aprons, a pool table, a cigar room, comfortable plush leather waiting chairs, oriental-style carpets, bold hanging art, soothing low tempo background music, frosted glass, old fashioned barber chairs where patron relax with hot towels, shoe shine stands, a bar where patrons can sit, and a circular logo featured throughout the salon. Allan Aff., ¶¶ 18-19,

23.  As such, The John Allan Company's trade dress is fanciful or arbitrary and, therefore, inherently distinctive.  Moreover, Defendants' copying of The John Allan Company's trade dress, as discussed in detail herein, offers further support for the conclusion that The John Allan Company's trade dress is inherently distinctive.  See Hartford House, Ltd. v. Hallmark Cards, Inc., 846 F.2d 1268, 1271 (10th Cir.), cert., denied, 488 U.S. 908, 102 L. Ed.2d 248, 109 S. Ct. 260 (1988).

ii.    Plaintiff's Trade Dress Has Acquired Secondary Meaning

In any event, The John Allan Company has established secondary meaning in its trade dress by virtue of its use and promotion of its distinctive trade dress for more than 17 years. Evidence of  unsolicited media coverage, sales success, long-term use and conscious imitation by the defendant (which, without question, occurred here), strongly supports a finding of secondary meaning. Marker International v. De Bruler, 844 F.2d 763, 764 (10th Cir. 1988) (where the defendant admitted he had used the Marker surname because the name had a reputation for quality products and defendant believed consumers would therefore associate that reputation with the defendant's products); Landscape Forms, Inc. v. Columbia Cascade Co., 117 F. Supp. 2d 360, 366 (S.D.N.Y. 2000)  ("plagiaristic behavior is strong evidence of secondary meaning; also, "five year period of continuous use of . . . trade dress provides additional evidence of secondary meaning"). See also Western Chem. Pumps, Inc. v. Superior Mfg., 989 F. Supp. 1112, 1121-22 (D. Kan. 1997); Centaur Communications, Ltd. v. A/S/M Communications, Inc., 830 F.2d 1217, 1222-25 (2d Cir. 1987); Clinique Labs., Inc. v. Dep Corp., 945 F. Supp. 547, 559 (S.D.N.Y. 1996).

Here, The John Allan Company has been offering hair salon services utilizing its unique and exclusive signature trade dress since 1988. Allan Aff., ¶¶ 15, 18, 19 & 23. Those in the men's grooming industry, and consumers as well, because of the distinctive nature of the trade dress, have come to understand that it originates, or at least is associated with, a single source. Allan Aff., ¶ 23.

Further, The John Allan Company's trade dress has received unsolicited recognition in the press as being innovative in the men's grooming industry. The following excerpts from articles in print publications describe, and more importantly recognize and acknowledge, the unique features of the trade dress of the JOHN ALLAN'S men's club salons:

**GQ**, September 1989:     Though in the heart of the financial district, the club has a relaxed, social atmosphere that is more P.G. Wodehouse than E.F. Hutton - right down to the walnut bar and the billiard table.

**Cigar Aficionado**, *October 1998*:     No high-tech 'pump up' salon chairs at John Allan's. He's designed the place to recall the days when brokers barked orders for shares of 'steel' and 'radio.' Boardroom chairs, upholstered in dark green leather, serve for haircuts and manicures."

**Atomic Magazine**, *Summer 2000*:     You're transported not so much to the past as to an idealized men's world... A billiard table sits at the far end of the space, and in between, there is what appears to be a hair salon with all the chairs, mirrors, sinks and tools of the trade. The feeling, however, the general ambience, is more like a cross between a London Club and a day at a men's spa.

**Business Week**, July 30, 2002:     But this isn't your typical salon. Investigate a little further and you'll notice a smaller room furnished with well-stuffed leather chairs, where clients can relax while watching TV and flicking cigar ashes into a large ashtray. In another room, patrons shoot pool and sip drinks from the bar, which is stocked with

16

|  | spirits and dominated by a shiny espresso machine. Then you notice that the only women at the salon are the ones who work there. All of the salon's customers are men. |
|---|---|
| **Razor**, Oct. 2004: | Traditional male bonding is an everyday experience at John Allan's men's clubs. Here guys can escape the everyday and enjoy beer on tap, shoe shines, meeting rooms, haircuts and spa treatments. It's a true male indulgence, but one that is very much deserved. |

Allan Aff., ¶ 24, Exh. H.  In fact, The John Allan Company's trade dress has been featured on

television programs such as the Today Show and Access Hollywood on NBC and on other

programs like CNN Headline News that were broadcast nationwide, including in Wichita.  Allan

Aff., ¶ 20.

Moreover, and most significantly, a comparison of the design features of Defendants'

salon with The John Allan Company's trade dress unmistakably reveals that Defendants

consciously imitated The John Allan Company's trade dress.  Allan Aff., ¶¶ 30, 35-37, Exhs. O

& P.  See also, Point I.B.2.c.iv, below.  Consequently, The John Allan Company has

demonstrated that its trade dress has attained secondary meaning and thus is entitled to protection

under the Lanham Act. Landscape Forms, 117 F. Supp. at 366-67; Gasser Chair Co. v. Infanti

Chair Mfg. Corp., 943 F. Supp. 201, 213-14 (E.D.N.Y. 1996); PAF S.r.l., 712 F. Supp. at 403-08.

b.    Plaintiff's Trade Dress is Non-Functional

Plaintiff's trade dress is also non-functional and Defendants will not be able to establish

the contrary.  The functionality of some elements of a trade dress does not render the totality of

those elements ineligible for trade dress protection. Clinique Labs., 945 F. Supp. at 559 n.15.

The issue of functionality turns on whether protection of the combination of features would

17

hinder competition or impinge upon the right of others to complete effectively.  Brunswick Corp.
v. Spinit Reel Co., 832 F.2d 513, 519 (10th Cir. 1987).  Moreover, the availability of alternative
appealing designs is critical in determining that trade dress is non-functional.  Hartford House,
Ltd. v. Hallmark Cards, Inc., 846 F.2d 1268, 1273 (10th Cir. 1988).

     In the present case, The John Allan Company's trade dress is not functional.  The
aesthetic elements of the JOHN ALLAN'S salons are dictated by look, not by function.  For
example, the traditional low set leather chairs where customers at JOHN ALLAN'S salons
receive haircuts and manicures make it more, not less, difficult for the stylist or manicurist to
perform the services.  A functional chair would be a traditional barber's chair that can be
adjusted up and down and facilitates the ease with which a haircut or manicure is provided.  This
style of chair was chosen by The John Allan Company based upon the aesthetic feeling that it
conveys and for the purpose of visually enhancing the men's club atmosphere, not based upon
any utilitarian features.  See Allan Aff.,  ¶ 18.

     Similarly, many of the other features of JOHN ALLAN'S salons, such as miniature
traditional wood dressers at the cutting stations, a pool table, a cigar room, a bar, frosted glass,
black cutting jackets and black valet aprons, oriental-style rugs, bold art hanging on the walls and
soothing low tempo background music, when used in the context of a salon, are all arbitrary
features that add to the aesthetic environment, but are not used to provide men's grooming
services.  Function did not dictate the choices.  Allan Aff., ¶ 18.  Moreover, when these elements
are considered in their totality, it is impossible to conclude that The John Allan Company's trade
dress is functional.

Thus, the aesthetic design features of Plaintiff's salons are not necessary to the functioning of a salon.  In other words, there are numerous ways to design the look of a salon that performs the same functions and services as that of Plaintiff, but that would not be confusingly similar in appearance to The John Allan Company's unique trade dress.  Defendants, however, and discussed in detail hereinafter, chose not to do so.  Suffice it to say, instead of creating their own unique environment, Defendants used virtually all of the design elements of JOHN ALLAN'S salons, which Defendants copied almost exactly, in order to promote their services.

c.      There is a Likelihood of Confusion

A claim for trade dress infringement is established by demonstrating a likelihood of confusion between the trade dresses at issue.  <u>Clinique Laboratories,</u> 945 F.Supp. at 558.  In this Circuit, a multi-factor balancing test guides the inquiry into whether a likelihood of confusion exists. <u>Heartsprings, Inc. v. Heartspring, Inc.</u>, 143 F.3d 550, 554 (10th Cir. 1998).  These factors include: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer; (3) evidence of actual confusion; (4) the similarities of the services and marketing strategies; (5) the degree of care likely to be exercised by purchasers; and (6) the strength of the trademarks.  <u>Id.</u>

i.      Similarity of The Trade Dress

As for the first factor, there can be no dispute that the Defendants' trade dress  mimics The John Allan Company's trade dress in almost every important aspect.  This was found to be especially important in <u>Paddington Corp. v. Attiki Importers & Distribs., Inc.</u>, 996 F.2d 577 (2d Cir. 1993), in which the Court concluded that any minimal differences between the trade dresses were outweighed by their striking similarity. <u>Paddington Corp.</u>, 996 F.2d at 585-86.

Here the appearance of Defendants' salon is virtually indistinguishable from that of JOHN

19

ALLAN'S.  Allan Aff., ¶¶ 35, 37, Exhs. O & P.  Just like a JOHN ALLAN'S salon, the infringing salon of Defendants includes formal traditional low plush leather chairs, double sided mirrored cutting stations, traditional wood cabinetry at the stations, stools with wheels, low tables for drinks, black cutting jackets and black valet aprons, bold hanging art, oriental-style rugs, plush leather waiting chairs, frosted glass, nostalgic barber chairs for hot towels, shoe shine stands, a pool table, a cigar room and a circular  logo featured prominently throughout.

ii.    <u>Intent</u>

In cases where a defendant, with knowledge of plaintiff's prior rights, intentionally copied plaintiff's trade dress, courts routinely find that the infringer -- by its copying -- endeavored to create a likelihood of confusion between its products and those of the plaintiff. <u>See Sally Beauty Co.</u>, 304 F.3d at 973; <u>P.E. Guerin, Inc. v. Nanz Custom Hardware, Inc.</u>, 45 U.S.P.Q.2d 1524, 1529, 1997 U.S. Dist. LEXIS 19914 (S.D.N.Y. 1997); <u>Clinique Labs.</u>, 945 F. Supp. at 555; <u>PAF S.r.l.</u>, 712 F. Supp. at 408.  Indeed, "a finding of intent to copy and 'cash in' on the plaintiffs' reputation and goodwill may, standing alone, justify a finding of likelihood of confusion."  <u>Hartford House Ltd</u>. v. <u>Hallmark Cards Inc</u>., 647 F. Supp. 1533, 1543 (D.Colo. 1986) .  "[T]he second to market has a duty to adopt a trade dress which is unlikely to cause confusion," <u>Telebrands Corp. v. E. Mishan & Sons</u>, 46 U.S.P.Q.2d 1493, 1508, 1997 U.S. DIST LEXIS 6229 (S.D.N.Y. 1997), and thus actual or constructive knowledge of the senior user's trade dress indicates bad faith, especially where it is plain that deliberate copying occurred. <u>Paddington Corp.</u>, 996 F.2d at 587.  <u>Hartford</u>, 647 F. Supp. at 1543 ("one who adopts a trade dress similar to another already established in the marketplace is viewed with suspicion by the courts.").

20

Here, Defendants can hardly argue that they did not intentionally copy The John Allan Company's trade dress.  The identity of the common features shared by both The John Allan Company's and Defendants' salons, all lead to the inescapable conclusion that Defendants knew exactly what they were doing -- they intentionally copied The John Allan Company's trade dress, with the very intent to create confusion with The John Allan Company's salons.  This conclusion is bolstered by the fact that Defendants Craig Tatro and Erik Leschuk each received services at JOHN ALLAN'S salons prior to the opening of their competing establishment, and thus unquestionably were well aware of The John Allan Company's trade dress.  Allan Aff., ¶ 40, Exh. R.

       iii.    Actual Confusion

Next, a finding of actual confusion is not necessary in order to prevail in a action for trademark or trade dress infringement -- it is the **likelihood** of confusion that is critical.  P3 Int'l, 52 U.S.P.Q.2d at 1514; PAF S.r.l., 712 F. Supp. at 409.  Hartford, 647 F. Supp. at 1543 ("likelihood of public confusion is the dispositive issue in a Lanham Act case").   Here, the virtual identity of the trade dress and the nature of the competing services presumes confusion. Allan Aff., ¶¶ 29, 35-39, Exhs. O & P.  A mere glance at the parties' competing salons establishes that confusion is likely, and that a preliminary injunction should issue.  Further, as set forth above there have already been two instances of actual confusion.  Allan Aff., ¶¶ 28, 42, Exh. U; Riordan Aff., ¶¶ 3-4.

       iv.    Similarity of the Services and Marketing Strategies

As set forth above in Point I.B.1.d, the services and marketing strategies of The John Allan Company and Defendants are strikingly similar.  The services themselves are identical and

Defendants sell to many of the same type of consumers as those that frequent JOHN ALLAN'S salons.  Allan Aff., ¶¶ 42-44.  Thus, consumers are quite likely to mistakenly assume that Defendants' salon services are associated with or are at least sponsored or approved by The John Allan Company.  Studio 1712, Inc. v. Etna Products Co., 777 F. Supp. 844, 853 (D. Colo. 1991) ("the likelihood of public confusion is greatest when...products are extremely similar and reach the same consuming public at a time relevant to the alleged infringement by the same means of distribution."); Centaur Communications, 830 F.2d at 1226; Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339, 355 (S.D.N.Y. 1998); Fun-Damental Too v. Gemmy Indus. Corp., 111 F.3d 993, 1003 (2d Cir. 1997); Paddington Corp., 996 F.2d at 585-586.  This factor also weighs heavily in Plaintiff's favor.

    v.  The Degree of Care Likely to Be Exercised by Purchasers

  For a discussion of this factor, see Point I.B.1.e, above.

    vi.  Strength

  The relevant inquiry in evaluating the strength of The John Allan Company's trade dress is the tendency of the trade dress to act as a source identifier, even if the source is unknown to the consumer.  Heartland Corp. v. Sifers, 2002 U.S. Dist. LEXIS 13581, *23 (D. Kan. July 12, 2002).  Fun-Damental Too, 111 F.3d at 1003; Paddington Corporation v. Attiki Importers & Distributors, Inc., 996 F.2d 577, 585 (2d Cir. 1993).  Such strength can result from secondary meaning.  Paddington Corporation, 996 F.2d at 585.  The John Allan Company has already shown that its trade dress has been featured in many national print publications and nationally aired television programs and has come to denote a single source.  Allan Aff., ¶¶ 20-26, Exhs. E & H.  See also discussion at I.B.2.a.ii.  Moreover, sales and promotional efforts with respect to

22

the trade dress have been quite significant.  Allan Aff., ¶¶ 26-27.  Where, as here, the trade dress

is distinctive and indicative of source, this factor weighs in favor of Plaintiff.  <u>P3 Int'l</u>, 52

U.S.P.Q.2d at 1513.

In summary, an analysis of the six likelihood of confusion factors points directly to a

finding of confusion and therefore a likelihood of success on the merits of The John Allan

Company's trade dress infringement claim.

3.     <u>Plaintiff is Likely to Prevail on its Claims of Unfair Competition</u>

In Counts VIII and IX, Plaintiff claims that Defendants' conduct constitutes unfair

competition under Section 43(a) of the Lanham Act and Kansas common law. Plaintiff's

likelihood of success on its claims of unfair competition is apparent from the discussion above of

Plaintiff's likelihood to succeed on its claims under the Lanham Act § 43(a).  <u>See</u> <u>Heartland</u>

<u>Corp. v. Sifers</u>, 2002 U.S. Dist. LEXIS 13581, at *23 (D. Kan. July 12, 2002)

Moreover, Defendants' wrongful acts constitute not just the infringement of Plaintiff's

names, marks, and trade dress.  Defendants have set out to unfairly compete with Plaintiff  and

thus violate the unfair competition provisions of § 43(a), as well as commit unfair competition

under state common law.

As the Court is aware, unfair competition, both the common law tort and the federal

statute, attempts to enforce a certain level of honest practices among businesses, and generally

fairness and honesty in business dealings.  Here, Defendants have misappropriated valuable

elements of Plaintiff's business and business practices.

For example, Defendants have copied various elements of Plaintiff's website, such as its layout of the that site, by placing a confusingly similar logo as a watermark on the site, just as in Plaintiff's site.  Allan Aff., ¶ 33.  Defendants have also copied advertising techniques, which promote the business.  Also, Defendants' use of photographs on their website to promote their business which photographs and are similar to the photographs used at Plaintiff's website.  <u>See</u> Exhs. N, O & P.

Defendants have also misappropriated the themes which Plaintiff adopted to generate its goodwill and build its client lease -- themes fostered by Plaintiff's registered slogan marks MEN'S SERVICE REDISCOVERED and A RETURN TO A SIMPLER TIME.  Allan Aff., ¶ 25, Exh. I.  Defendants' website promotes their business by the slogan "COME JOIN US AS WE RETURN TO DAYS GONE BY....WHERE SERVICE WAS COMPROMISED ON NO MAN."  Allan Aff., ¶ 38.

Defendants also adopted memberships just as does Plaintiff, offering salon services to men free anytime they wish to go to the salon as long as an annual or monthly membership fee is paid.

In short, Defendants' conduct is a blatant example of the type of unfair competition that is precluded by both federal and common law.

C.   <u>There is A Substantial Threat of Irreparable Harm if the Injunction is Not Issued</u>

The law is clear that trademark infringement results in irreparable harm  <u>See</u> <u>Amoco Oil Co. v. Rainbow Snow, Inc.</u>, 809 F.2d 656, 663 (10th Cir. 1987).   "Trademark infringement and unfair competition by their very nature result in irreparable injury since the attendant loss of goodwill, reputation and business cannot adequately be quantified and the trademark owner

cannot adequately be compensated." <u>Bayer Healthcare LLC</u>, 72 U.S.P.Q.2d at 1756. <u>See also</u>

<u>Heartland Corp. v. Sifers</u>, 2002 U.S. Dist. LEXIS 13581, at *28 (D. Kan. 2002)("Because a

trademark represents intangible assets, such as reputation and goodwill, irreparable injury will be

presumed upon a showing of trade mark infringement.").

  The Allan Aff. details the irreparable harm and damage already suffered by The John

Allan Company and which will continue to be suffered should Defendants continue to operate a

competing facility under the name CRAIG ALLEN'S or a similar name.  The existence of such

operation in the marketplace dilutes and undermines the exclusivity of the well known The John

Allan Company marks and trade dress in connection with men's grooming services and products

and is likely to cause confusion in the trade and with the public. Further, as set forth in the Allan

Aff., not only is it likely that Defendants' use of The John Allan Company marks and trade dress

will cause confusion among prospective customers, there is, in just the few months since

Defendants' knock-off business opened, undisputed actual confusion.

  Should Defendants be allowed to operate a competing salon using The John Allan

Company's trademarks and trade dress, such operation will cause further confusion and will

dilute and undermine The John Allan Company's trademarks and trade dress that The John Allan

Company has expended great effort and expense to promote and establish as symbols of quality

men's grooming services and products.  And even if the quality of Defendants' salon is on par

with that of the Plaintiff's establishments, Plaintiff will be irreparably harmed by its inability to

control the reputation and goodwill that it has built up over 17 years. <u>See</u> <u>Joy Mfg. Co. v. CGM</u>

<u>Valve & Gauge Co.</u>, 730 F. Supp. 1387 (S.D. Tex. 1989).

D.    The Threatened Injury To Plaintiff Outweighs The Harm The Injunction
      May Cause To Defendants

JOHN ALLAN'S salons have been operating in New York City by The John Allan

Company since 1988.  Plaintiff has taken great care and expended substantial amounts of money

to maintain and enhance the reputation of  JOHN ALLAN'S as one of the premier men's hair

salons and JOHN ALLAN'S has been recognized as an innovative leader in the men's grooming

industry as a result of these efforts.  Allan Aff., ¶¶ 26-27.

Defendants are seeking wrongfully to take advantage of Plaintiff's excellent reputation

and to use Plaintiff's goodwill for their competing venture.  The harm to Plaintiff if Defendants

are allowed to use The John Allan Company's marks and trade dress for their Wichita salon far

outweighs any potential harm to Defendants caused by issuance of an injunction.  Defendants

will simply have to choose a different names and trade dress for their establishment that do not

infringe upon another's effort and expenses.

Here, where Defendants' rip-off establishment has only recently opened for business, the

prejudice to Defendants' rip-off business by reason of an injunction is de minimis in light of the

irreparable harm to Plaintiff if Defendants are permitted to engage in their campaign of unfair

competition and pawning off.

E.    A Preliminary Injunction Serves the Public Interest

"Customer confusion is by its very nature against the public interest."Teledyne Indus.,

Inc. v. Windmere Prods., Inc., 433 F. Supp. 710, 740 (S.D. Fla. 1977).  In a situation where there

is actual customer confusion, as here, the issuance of a preliminary injunction serves the public

interest by immediately ending confusion in the marketplace. See Laboratorios Roldan, 902 F.

Supp. at 1571.

Since Defendants' use of The John Allan Company marks and trade dress is confusing and will continue to confuse the public, the issuance of a preliminary injunction against Defendants will only serve to promote the public interest.

## II.  PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY

District Courts have broad power to permit expedited discovery in appropriate cases, see Rules 26(d), 33(a) and 34(b), F.R.C.P., and such discovery is routinely granted in actions involving trademark and service mark infringement, trade dress infringement and unfair competition. See, e.g. Behnam Jewelry Corp. v. Aron Basha Corp., 45 U.S.P.Q.2d 1078, 1094 (S.D.N.Y. 1997); (S.D.N.Y. 1996); Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc., 858 F. Supp. 1268, 1269 (S.D.N.Y. 1994), aff'd without opinion, 57 F.3d 1062 (2d Cir. 1995); Francis S. Denney, Inc. v. I.S. Labs., Inc., 737 F. Supp. 247, 248 (S.D.N.Y. 1990).

Here, Plaintiff is entitled to expedited discovery to discover the full nature of Defendants' infringing and improper activities as well as the circumstances surrounding the adoption and use of the infringing names, marks, logos and trade dress.

## CONCLUSION

Defendants have "ripped-off" virtually every aspect of Plaintiff's business, including the JOHN ALLAN'S business name and mark, the JA Circle Design mark, the JOHN ALLAN'S & JA Circle Design, the MEN'S SERVICE REDISCOVERED mark, and the distinctive trade dress of Plaintiff that creates the men's club environment in its hair salons.  Defendants' outrageous conduct, which was set in motion by Craig Tatro and Erik Leschuk each visiting Plaintiff's salons with the intent to misappropriate the proprietary trademarks and trade dress of Plaintiff, must not continue.  Defendants should be enjoined immediately from unlawfully using in

27

connection with their recently opened men's salon in Wichita, Kansas: (1) the name CRAIG

ALLEN'S, including the corporate name THE CRAIG ALLEN COMPANY LLC and the

domain name <craigallens.com>; (2) the CA Circle Design logo; (3) the mark CRAIG ALLEN'S

& CA Circle Design; (4) the mark MEN'S SERVICE REDISCOVERED; (5) a trade dress that is

likely to be confused with or resembles Plaintiff's trade dress; and from otherwise unfairly

competing with The John Allan Company.


                                        Respectfully submitted,


                        By:    s/Charles E. Millsap_____
                               Charles E. Millsap (# 9692)
                               FLEESON, GOOING, COULSON & KITCH, L.L.C.
                               125 N. Market Street, Suite 1600
                               Wichita, Kansas 67201-0997
                               Tel:  (316) 267-7361
                               Fax: (316) 267-1754
                               E-mail: cmillsap@fleeson.com

                        and

                               GOTTLIEB, RACKMAN & REISMAN, P.C.
                               Jeffrey M. Kaden, Esq.  (JMK 2632)
                               Maria A. Savio (MAS 7756)
                               Yuval H. Marcus, Esq. (YHM 5348)
                               270 Madison Avenue
                               New York, N.Y. 10016
                               Tel:  (212) 684-3900
                               Fax: (212) 684-3999
                               E-mail: jkaden@grr.com; msavio@grr.com; ymarcus@grr.com

                               Counsel for Plaintiff

<u>Certificate of Service</u>

I hereby certify that on May 20, 2005, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

> Todd N. Tedesco
> FOULSTON & SIEFKIN LLP
> 1551 N. Waterfront Parkway
> Suite 100
> Wichita, Kansas 67206-4466
> [Attorneys for Defendants]

and a copy was also e-mailed directed to Mr. Tedesco at <u>ttedesco@foulston.com</u>.

By:     <u>s/ Charles E. Millsap</u>